[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 12-14555 & 12-14559
Non-Argument Calendar

_____

D.C. Docket Nos. 8:10-cr-00104-EAK-EAJ-1
8:12-cr-00197-SDM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

DANIEL GUTIERREZ-DUENES,
a.k.a. Juan Vasquez,
a.k.a. Jose Vasquez,

Defendant-Appellant,

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(June 17, 2013)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

In this consolidated appeal, after pleading guilty, Daniel Gutierrez-Duenes challenges (1) his 24-month sentence for illegally reentering the United States after a previous deportation, in violation of 8 U.S.C. § 1326(a), (b)(1); and (2) his consecutive 10-month sentence for violating his probation following an earlier conviction. After review, we affirm.

## I.    BACKGROUND FACTS

### A.    Gutierrez-Duenes's Prior Illegal Reentries and Convictions

Gutierrez-Duenes's parents brought him into the United States illegally from Mexico in the early 1990s, when he was nine years old. Before committing the present illegal reentry offense, Gutierrez-Duenes had several convictions and was deported on four separate occasions.

In 1999, at age 18, Gutierrez-Duenes was convicted for unauthorized use or possession of an identification card and for driving without a valid driver's license, after he provided an officer with a counterfeit Resident Alien Card during a traffic stop. His total sentence for that offense consisted of 18 months' probation. Although the unauthorized ID possession offense was a felony, Gutierrez-Duenes was not deported at that time.

In June 2003, Gutierrez-Duenes was arrested for carrying a concealed weapon (brass knuckles) and operating an unregistered motor vehicle. During the arrest, Gutierrez-Duenes told the officer: "You're gonna remember my face," and

2

"You're gonna regret this."  After pleading guilty to those charges, Gutierrez-Duenes was released to immigration officials and deported to Mexico for the first time.

Several days later, Gutierrez-Duenes crossed the border into Texas, but was quickly found by border patrol agents and voluntarily deported back to Mexico.

In September 2009, Gutierrez-Duenes was arrested in Florida on several charges of driving without a valid driver's license.  He pled guilty to those offenses, served 20 days in jail, and was deported to Mexico for the third time on October 5, 2009.

Less than one year later, Gutierrez-Duenes was found in the United States again.  In March 2010, he was indicted in federal court for reentering the United States after having been previously deported following a conviction for a felony (the 1999 unauthorized use/possession of an ID card conviction), in violation of 8 U.S.C. § 1326(a) and (b)(1).

Gutierrez-Duenes pled guilty to this offense, and, in July 2010, the district court sentenced him to 60 months of probation.  On July 28, 2010, Gutierrez-Duenes was deported to Mexico for the fourth time.

**B.    The Present Offenses**

Following Gutierrez-Duenes's 2010 federal conviction for illegal reentry and subsequent deportation, and while serving his 60 months' probation, Gutierrez-

3

Duenes returned to the United States illegally for the fifth time. This illegal reentry led to two separate criminal proceedings: one for the substantive illegal reentry offense, and another for violating the 60-month probation imposed for the 2010 illegal reentry offense.

Specifically, in May 2012, a federal grand jury indicted Gutierrez-Duenes on two counts: (1) illegally reentering the United States after having been previously deported following a conviction for a felony, in violation of 8 U.S.C. § 1326(a) and (b)(1); and (2) entering the Unites States at a time and place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) (a misdemeanor).

Also in May 2012, the U.S. Probation Office filed a "Petition for Warrant or Summons for Offender Under Supervised Release," alleging that Gutierrez-Duenes engaged in new criminal conduct, namely, reentry of a deported alien. The petition also alleged that Gutierrez-Duenes violated a special condition of the terms of his supervision (for the 2010 offense) when he illegally reentered the United States. The probation officer recommended that Gutierrez-Duenes's term of probation be revoked.

**C.     Presentence Investigation Report for Illegal Reentry**

4

On May 30, 2012, Gutierrez-Duenes pleaded guilty to both counts of the indictment. Subsequently, the probation officer compiled a Presentence Investigation Report ("PSI") and calculated Gutierrez-Duenes's guidelines range.

The PSI set a base offense level of 8, pursuant to U.S.S.G. § 2L1.2, and applied a four-level increase under § 2L1.2(b)(1)(D) because Gutierrez-Duenes previously was deported subsequent to a felony conviction. After a two-level reduction for acceptance of responsibility, Gutierrez-Duenes's offense level became 10.

Gutierrez-Duenes received one criminal history point for his prior conviction of carrying a concealed weapon, one criminal history point for his 2010 illegal reentry conviction, and two points for being on probation while committing the present offense. These four criminal history points placed Gutierrez-Duenes into a criminal history category of III, which, combined with an offense level of 10, yielded a guidelines range of 10 to 16 months in prison. There were no mandatory minimum sentences for Gutierrez-Duenes's offenses. His statutory maximum was 10 years for the § 1326(a) illegal reentry offense, and 6 months for the § 1325(a)(1) illegal-port-of-entry offense.

Gutierrez-Duenes made no pertinent factual or legal objections to the PSI. He did file a sentencing memorandum, however, asking the district court to impose

a sentence within the guidelines range of 10 to 16 months, and not to vary upwards from that range.

To support his request, Gutierrez-Duenes cited the following mitigating factors: (1) the government was not seeking an upward variance; (2) the guidelines already accounted for Gutierrez-Duenes's recidivism by way of an increased criminal history category and a four-level enhancement; (3) Gutierrez-Duenes received only probation for his 2010 illegal reentry, meaning that a substantially greater, within-guidelines term of imprisonment would provide adequate deterrence; (4) Gutierrez-Duenes faced an additional consecutive term of imprisonment for violating probation; (5) a within-guidelines sentence would be consistent with sentences imposed for similar offenders; (6) Gutierrez-Duenes was a non-violent offender, and a lengthy sentence was not necessary to protect the public; (7) courts rarely imposed above-guidelines sentences for illegal reentry; (8) Gutierrez-Duenes reentered the United States out of concern for his children, as their mother suffered from significant mental health issues, but now that the children were in the care of other relatives, the motivation for Gutierrez-Duenes to commit further illegal reentries was eliminated; and (9) Gutierrez-Duenes was culturally assimilated to the United States, and the U.S. Sentencing Commission has recognized such cultural assimilation as a mitigating factor.

## D.    Sentence for Illegal Reentry

6

At the sentencing hearing for illegal reentry, Gutierrez-Duenes's defense counsel reiterated that he had no objections to the PSI's factual content or the guidelines calculations.  The district court then adopted the PSI.

Defense counsel again asked for a sentence within the guidelines range of 10 to 16 months, citing some of the mitigating factors described in his sentencing memorandum.  Defense counsel also noted that Gutierrez-Duenes had been cooperating with the government and had provided information on people involved in transporting aliens.  The government disagreed with Gutierrez-Duenes's arguments in mitigation, but did not ask for a sentence above the guidelines range.

Gutierrez-Duenes himself took the stand, apologized for illegally reentering the United States, and stated that he did not intend to commit the offense.  He explained that he had to come back because a "problem came up with [his] daughters," and that he "thought about it hard," but had to do it.

Before imposing sentence, the district court cited Gutierrez-Duenes's four prior deportations and observed that the number of his illegal reentries was "troubling."  The district court noted that the guidelines only accounted for one of Gutierrez-Duenes prior illegal reentries, the only one for which he had been prosecuted.

The district court further noted that the maximum sentence for Gutierrez-Duenes's offense was 10 years, and that a 10 to 16-month sentence for a defendant

with four prior deportations, like Gutierrez-Duenes, likely "would not receive a standing ovation" from Congress, particularly for a defendant "who has been arrested and given false names to law enforcement repeatedly, who on one occasion told the officer that . . . the officer would remember the defendant's face and that he was going to regret having arrested him."

The district court then imposed a sentence of 24 months' imprisonment for illegal reentry and a concurrent 6 months for the § 1325(a)(1) misdemeanor offense, to be followed by a total 3-year term of supervised release. The district court stated that it had considered the 18 U.S.C. § 3553(a) sentencing factors. The district court also commented that the 24-month sentence was not too long, but on the contrary, barely long enough.

## E.    Sentence for Probation Violation

Shortly after the district court imposed the 24-month sentence for illegal reentry, Gutierrez-Duenes attended a combined plea and sentencing hearing for violating his probation (for the 2010 illegal reentry offense) before a different district court judge. The guidelines range for the probation-violation offense was 4 to 10 months. Although the record does not contain a separate PSI calculating the guidelines range for the probation-violation offense, the parties do not dispute that the guidelines range was 4 to 10 months.

8

At this hearing, Gutierrez-Duenes pled guilty to violating probation, and his defense counsel asked for a sentence of four months, the low end of the guidelines range. Defense counsel pointed out that Gutierrez-Duenes had just received a 24-month, above-guidelines sentence for the illegal reentry offense, that this was his first term of imprisonment for illegal reentry, and that he had lived in the United States since he was 9 years old and, when deported initially, was "sent back to a country he knew nothing about."

Gutierrez-Duenes himself made a statement, again apologizing for his crimes, and explaining that he would have gone back to Mexico with his children and the children's mother but for his arrest.

The government asked for a 10-month sentence, the high end of the guidelines range, citing Gutierrez-Duenes's recidivism and his criminal history.

The district court stated that it had looked at the PSI for the 2010 illegal reentry and Gutierrez-Duenes's record. The district court also recognized that Gutierrez-Duenes was "brought to this country," and that his family lived in the United States and was "pulling at [his] heart strings for [him] to come back." The district court indicated, however, that instead of continuing to return to the United States, Gutierrez-Duenes could have made arrangements for his family to live closer to the Mexican border, or he could have relocated himself and his family to another Spanish-speaking country. The district court stressed that Gutierrez-

Duenes and his family needed to understand that he had to stop illegally reentering the United States.

The district court noted that a sentence at the high end of the guidelines range would yield a combined 34-month sentence for Gutierrez-Duenes.  The district court then followed the government's recommendation and imposed a sentence of 10 months' imprisonment for violating probation on the 2010 illegal reentry offense, the high end of the guidelines range, to run consecutively to the 24-month sentence for the substantive 2012 illegal reentry offense.  The district court recognized that it was a "heavy sentence," but "one that I hope will get through to [Gutierrez-Duenes] and to his family."

## II.    STANDARD OF REVIEW

We review all sentences—whether below, within, or above the guidelines range—"under a deferential abuse-of-discretion standard."  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).[1]  "First, we determine whether the district court committed any significant procedural error and, second, whether the sentence was substantively reasonable under the totality of the circumstances."

---

[1]We also review for reasonableness a sentence imposed upon the revocation of probation or supervised release.  See United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006) (reviewing for reasonableness a sentence imposed after revocation of supervised release); see also United States v. Campbell, 473 F.3d 1345, 1348 (11th Cir. 2007) (holding that probation revocation proceedings are "conceptually the same" as supervised release revocation proceedings).

United States v. Overstreet, 713 F.3d 627, 636 (11th Cir. 2013) (internal quotation marks omitted).

On appeal, Gutierrez-Duenes challenges the procedural and substantive reasonableness of both his 24-month sentence for illegal reentry and his 10-month consecutive sentence for probation violation.

### III.  PROCEDURAL REASONABLENESS

"A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence."  United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008).

Gutierrez-Duenes argues that his sentences were procedurally unreasonable because (1) the district court failed to consider all of the 18 U.S.C. § 3553(a) factors, and instead focused mainly on his prior illegal reentries; and, (2) with regard to the 24-month sentence, the district court essentially double-counted Gutierrez-Duenes's prior illegal reentries in varying upwards, as this factor was already accounted for by the four-level enhancement under § 2L1.2(b)(1)(D).[2]

### A.    Consideration of § 3553(a) Factors[3]

---

[2]Gutierrez-Duenes does not challenge the consecutive nature of his 10-month sentence.

[3] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense,

In this case, both district court judges adequately considered the § 3553(a) factors in sentencing Gutierrez-Duenes.  In imposing the 24-month sentence for illegal reentry, the district court cited Gutierrez-Duenes's multiple previous reentries into the United States, prior incidents of arrest, giving false names to law enforcement, and telling an officer that he would regret arresting him.  The district court also specifically stated that it had considered the § 3553(a) factors.  See United States v. Sanchez, 586 F.3d 918, 936 (11th Cir. 2009) (stating that a district court need not discuss each § 3553(a) factor in explaining its sentence, as long as it "considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account").

Although the district court focused mainly on Gutierrez-Duenes's multiple prior illegal reentries in imposing a variance, the court was permitted to do so.  See Overstreet, 713 F.3d at 638 (stating that a district court is permitted to attach "great weight" to one § 3553(a) factor over others);  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court . . . ."  (internal quotation marks omitted)).

to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

As to the 10-month sentence for the probation violation on his earlier 2010 illegal reentry offense, the district court also committed no reversible procedural error.  To be sure, during the sentencing hearing for the probation violation, the district court did not expressly reference the § 3553(a) factors.  The record reflects, however, that the district court did consider these factors.  The district court listened to the parties' arguments, addressed the applicable guidelines range, and stated that it had looked at the PSI and Gutierrez-Duenes's record.  The district court also acknowledged that Gutierrez-Duenes was brought into the United States at a young age and that his family lived in the country and was "pulling at [his] heart strings" to come back.  The district court then set forth a reasoned basis for imposing the sentence; specifically, the need to impress upon Gutierrez-Duenes that he could not continue to illegally enter the United States.

We are thus satisfied that the district court judges considered all of the appropriate mitigating and aggravating § 3553(a) factors in imposing the above-guidelines sentence of 24 months for illegal reentry and the within-guidelines sentence of 10 months for the probation violation, and that no reversible error exists in the district court judges' explanations for those sentences.  See Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal

13

decisionmaking authority."); see also United States v. Irey, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc) ("No member of this Court has ever before indicated that a sentencing judge is required to articulate his findings and reasoning with great detail or in any detail for that matter.").

## B.    Double-Counting

The district court also did not improperly double-count Gutierrez-Duenes's multiple prior illegal reentries when it applied an upward variance in addition to the four-level enhancement under § 2L1.2(b)(1)(D).[4]  We have previously stated that "a district court can rely on factors in imposing a variance that it had already considered in imposing [a guidelines] enhancement."  United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010).  Moreover, the § 2L1.2(b)(1)(D) enhancement may be imposed for only one prior illegal reentry following a felony conviction, yet Gutierrez-Duenes had committed four such illegal reentries.  Thus, the district court could reasonably believe that the four-level enhancement did not sufficiently reflect Gutierrez-Duenes's recidivism and the need for deterrence.

## IV.  SUBSTANTIVE REASONABLENESS

In reviewing a sentence for substantive reasonableness, we examine "the totality of the circumstances," including "whether the statutory factors in § 3553(a)

---

[4]Section 2L1.2(b)(1)(D) provides for a four-level enhancement if the defendant was previously deported after "a conviction for any other felony," that is, a felony not listed as warranting a greater enhancement.  See U.S.S.G. § 2L1.2(b)(1)(D).

14

support the sentence in question." Gonzalez, 550 F.3d at 1324. "If the district court determines that a sentence outside the guideline range is appropriate, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Overstreet, 713 F.3d at 636 (internal quotation marks omitted). We will not reverse a sentence due to a variance "unless we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (internal quotation marks omitted).

In this case, Gutierrez-Duenes's combined sentence of 34 months was substantively reasonable. Before committing the present offense, Gutierrez-Duenes had illegally entered the United States and been deported on four occasions. He committed the present offense while on probation for a previous illegal reentry offense, and was fully aware that reentering the United States again would subject him to imprisonment.[5] Furthermore, Gutierrez-Duenes's prior illegal reentries do not alone reflect his willingness to violate the law, as he was previously convicted

---

[5] In fact, at his sentencing hearing for the 2010 illegal reentry offense, Gutierrez-Duenes told the district court:

> And this time I'm going to leave, and I'm not going to return again. And I'm going to ask my wife if she would like to go with me. But if not, I'll still leave. I'll go back, and I won't return here again. I'm going to go back and try to rebuild my life there and work in Mexico. And that's it because I don't want to come back here because I don't want to return to jail.

15

for possessing false identification and driving without a valid license, and once told a law enforcement officer that he (the officer) would regret arresting him.

In this light, the district court could reasonably determine that an upward variance was warranted to promote respect for the law, reflect the seriousness of the offense, provide just punishment, and deter criminal conduct. See 18 U.S.C. § 3553(a). And, as mentioned previously, despite the existence of mitigating circumstances, the district court acted well within its discretion in placing heavy weight on the factor of Gutierrez-Duenes's recidivism. See Overstreet, 713 F.3d at 638; Clay, 483 F.3d at 743. Accordingly, we affirm Gutierrez-Duenes's 24-month sentence for illegal reentry and his 10-month consecutive sentence for probation violation.

**AFFIRMED.**