[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14264
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cr-00007-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANTANA LUNDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 24, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Santana Lundy appeals her 69-month total sentence

for wire fraud conspiracy, in violation of 18 U.S.C. §§ 1349 and 1343 (Count 1),

theft of public money, in violation of 18 U.S.C. § 641 (Count 4), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 5). On appeal, Lundy argues that the district court's imposition of a 12-month upward variance was substantively unreasonable. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

Asha Spaulding operated a scheme to file fraudulent income tax returns using other people's personal identifiable information, including names, birth dates, and social security numbers, to obtain fraudulent tax refunds. Defendant Lundy "was one of Spaulding's initial conspirators," who provided Spaulding with personal identifiable information, helped Spaulding prepare "dependent of another" tax returns, and "assisted Spaulding in learning how to deposit someone else's individual's [sic] tax refund into her own account via split deposit." Defendant Lundy also introduced Spaulding to Ida Mae Hagan of Claxton, Georgia, and Spaulding used "the techniques taught to her by Lundy and Hagan" in the tax fraud scheme. Spaulding's tax fraud conspiracy, which involved Defendant Lundy and numerous other individuals, resulted in "more than $650,000 in false returns over the next several years."

In interviews with the Federal Bureau of Investigation ("FBI"), Spaulding said that Defendant Lundy began giving her personal identifiable information in

2

2008, and continued until sometime in 2011.  Using the information Defendant Lundy provided, Spaulding prepared fraudulent tax returns for Lundy once per week, and Lundy's refunds were between $1600 and $1800 per week.  Records for many of the returns were not available, but the FBI confirmed returns for four victims who stated that they did not authorize Lundy or Spaulding to file returns on their behalf.  The total amount of fraudulent returns for these four victims was $12,434.92.

## B.    Presentence Investigation Report

In preparing the presentence investigation report ("PSI"), the probation officer divided the three counts to which Lundy pled guilty into two groups. Group 1 consisted of Counts 1 and 4, which were grouped together, pursuant to U.S.S.G. § 3D1.2(d), because their offense level was determined largely based on the total amount of harm or loss.  Group 2 consisted of Count 5, aggravated identity theft.

For Group 1, the PSI started with a base offense level of 7, pursuant to U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(1).  The PSI increased the base offense level by 10 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(F), because Lundy was accountable for an intended loss of $160,000.  The PSI explained that $160,000 was "a very conservative intended loss amount" based on a minimum of $1600 per week for a minimum period of 25 months (December 2008 to January 2011).  The

3

PSI also increased Lundy's offense level by two levels, pursuant to § 2B1.1(b)(10)(C), because the offense involved sophisticated means, and reduced the offense level three levels, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility, yielding a total offense level of 16.  For Group 2, the PSI calculated a mandatory consecutive two-year prison term, pursuant to U.S.S.G. § 2B1.6 and 18 U.S.C. § 1028A(a)(1).

With an offense level of 16 and a criminal history category of III, the PSI recommended an advisory guidelines range of 27 to 33 months for Group 1, plus a consecutive 24 months for Group 2.  Neither party objected to the PSI.

In a sentencing recommendation attached to the PSI, the probation officer recommended a total sentence of 69 months, comprised of 45 months as to Counts 1 and 4, to be served concurrently, and 24 months as to Count 5, to be served consecutively.  The probation officer based the 12-month upward variance as to Counts 1 and 4 on Defendant Lundy's active role in the wide-ranging scheme that involved hundreds of thousands of dollars.  The probation officer pointed out that, unlike the more minor participants in the conspiracy, Defendant Lundy had played an active role in filing the fraudulent returns, and, because Lundy was instrumental in assisting Spaulding in learning how to expand her own tax fraud activities, Lundy arguably could be held accountable for the more than $650,000 in fraudulent returns filed by Spaulding.

4

In a sentencing memorandum, Defendant Lundy objected to the recommended upward variance.  Lundy requested a sentence at the bottom of the advisory guidelines range because: (1) she had accepted responsibility for her criminal conduct; (2) she had three small children aged 7 years, 3 years and 18 months; (3) at the time of her arrest, she was attending a technical college to further her education; (4) her commission of the crimes occurred during a period in which she was a frequent user of ecstasy; and (5) she had strong family support to help in her rehabilitation efforts.

## C.    Sentencing Hearing

At sentencing, the district court noted that Defendant Lundy had objected only to the sentencing recommendation.  The district court addressed Lundy personally and confirmed she had read the PSI and did not have "any objection or exception from what [the PSI] said occurred."  The district court then adopted the factual statements in the PSI as its findings of fact, and also adopted the PSI's guideline calculations.

As to the appropriate sentence, Defendant Lundy stressed that her ecstasy use was brought on by the killing of her boyfriend and affected her throughout the time frame in which she committed the charged offenses and most of her prior criminal conduct.  Lundy tried, however, to turn her life around after her children were born.

In response, the government pointed out that: (1) Defendant Lundy had deep ties to Spaulding, who was the most prolific filer in the conspiracy and had operated the scheme like a business out of her home, and Defendant Lundy had "taught and guided [Spaulding] as to how to file returns, specifically the dependent-of-another tax returns, which led to [Spaulding] filing returns with an intended loss of over [$]650,000"; and (2) unlike many of the other participants, Defendant Lundy had an extensive criminal history, including a violent felony conviction, and was on felony probation when much of her fraudulent activity occurred. The government argued that the probation officer's recommended upward variance was "quite reasonable in light of the activity in this case and the history of this defendant" and requested "at the very least, [a sentence] at the top end of the range for Ms. Lundy." Upon the district court's inquiry, the government noted page two of the PSI, which stated that Spaulding had received a 154-month sentence.

At this point, for the first time, Defendant Lundy's counsel argued that Lundy did not personally teach Spaulding. Lundy's counsel stated that, in some of Spaulding's interviews, Spaulding said that she heard from her niece what Lundy was doing and "decided she wanted to learn how to do these types of returns and found someone who knew the individual in Claxton who was doing them, and she took a return to this lady." Further, Lundy's counsel claimed that, although the PSI

6

reported that Lundy helped Spaulding expand her tax fraud activities with respect to the use of credit union accounts (presumably referring to the PSI's discussion of split deposits), Lundy did not control nor benefit from any credit union accounts except her own.

The district court stated that it had considered the 18 U.S.C. § 3553(a) factors, adopted the probation officer's recommendation, and sentenced Defendant Lundy to 69 months in prison, comprised of concurrent 45-month sentences on Counts 1 and 4, and a consecutive 24-month sentence on Count 5. The district court stated that Lundy's case was one in "a series of cases . . . over several months, if not years," arising out of a pervasive scheme that had "[h]undreds of victims and many, many people who participated in the fraud." The district court said it was familiar with the evidence, much of which was similar, but stressed that Lundy's sentence needed to recognize her own participation.

In explaining the upward variance, the district court emphasized Lundy's early participation in, and readiness to engage in and perpetuate, a massive fraud on citizens and the government. The district court stated that it imposed the sentence to reflect the seriousness of the offenses, provide for just punishment, and hopefully deter criminal conduct and protect the public from further crimes by Lundy. The district court agreed with the probation officer that Lundy "conspired directly with . . . Spaulding" and "was instrumental in assisting Spaulding in

[filing] a large number of false returns," and also that "Lundy, at least in part, was instrumental in instructing her in the process of filing the false returns." The district court further found that the advisory guidelines range did not adequately account for Lundy's crimes because: (1) while she was attributed with filing only $160,000 in fraudulent tax returns, "she was far more extensively involved in the criminal conspiracy"; and (2) although Lundy did not receive an increase for the number of victims because the identities of only four individuals could be definitively determined, it was "obvious" to the court based on the evidence that Lundy's criminal conduct victimized a substantially larger number of victims than those four who were identified.

## II.  DISCUSSION

This Court reviews the reasonableness of a sentence under a deferential abuse of discretion standard of review. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We first ensure that the district court committed no significant procedural error, such as improperly calculating the advisory guidelines range or inadequately explaining the chosen sentence, and then examine whether the sentence was substantively reasonable in light of the totality of the circumstances. Id. at 51, 128 S. Ct. at 597. The party who challenges the sentence bears the burden to show that the sentence is unreasonable in light of the record

8

and the § 3553(a) factors.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).[1]

Although in choosing the sentence, the district court must consider the § 3553(a) factors, the district court is not required to address each factor separately. United States v. Bonilla, 463 F.3d 1176, 1182 (11th Cir. 2006).  Moreover, the weight to be given to each § 3553(a) factor is committed to the district court's discretion.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

When the district court imposes a sentence outside the advisory guidelines range, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  We give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance, and do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable.  Gall, 552 U.S. at 47, 51, 128 S. Ct. at 594-95, 597; see also United States v. Irey, 612 F.3d 1160, 1186-87 (11th Cir. 2010) (en banc).  We

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

will vacate such a sentence on substantive reasonableness grounds only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Irey, 612 F.3d at 1190 (quotation marks omitted).

Here, Defendant Lundy has not shown that her 69-month sentence is substantively unreasonable in light of the record and the § 3553(a) factors. Lundy was a major participant in a wide-ranging tax fraud scheme that victimized many people and involved a high intended loss. Although the concurrent sentences on Counts 1 and 4 were 12 months above the advisory guidelines range, the district court adequately explained its justification for the upward variance of 12 months, which was reasonable given that the scheme as a whole had a greater number of victims and amount of intended loss than was accounted for in Lundy's advisory guidelines range.

Contrary to Defendant Lundy's claim, the district court did not place undue weight on her connection with Spaulding. Because the fraud was primarily perpetrated by Spaulding, Lundy's connection to Spaulding was appropriately viewed by the district court as part of the nature and circumstances of Lundy's

offenses, and the weight accorded to that factor was within the district court's discretion.[2]

Further, the district court was entitled to rely upon the PSI's fact statements because Defendant Lundy did not object to them at sentencing.  See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) (explaining that the failure to object to allegations of fact in the PSI admits those facts for sentencing purposes).  These undisputed facts included that Lundy helped Spaulding by teaching her how to file dependent-of-another tax returns and how to deposit others' tax returns into a split account and by introducing Spaulding to Hagan, who also taught Spaulding techniques used in the fraud scheme.  Moreover, the district court was not required to accept defense counsel's assertions, made after the district court adopted the PSI's undisputed facts, that Lundy in fact had not taught Spaulding how to file dependent-of-another tax returns or helped Spaulding to expand her fraudulent activities.  See United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013) (explaining that unless there is a stipulation between the parties, an attorney's factual assertions do not constitute evidence the district court can rely on at sentencing).

---

[2]While Lundy claims that she had no connection with Spaulding's home operation, called "The Office," the district court did not find that Lundy was involved with "The Office," but rather relied on Lundy's role in Spaulding's scheme as established by the undisputed facts in the PSI.

Lundy contends that the upward variance of 12 months is unreasonable because the district court considered her criminal history, which had already been taken into account by the sentencing guidelines. A district court may consider conduct already used to calculate the guidelines range in deciding whether to impose a variance. United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010). Likewise, there is no merit to Lundy's claim that the 12-month variance effectively nullified the three-level reduction for acceptance of responsibility. The fact that Lundy's ultimate sentence was above the advisory guidelines range does not mean that the district court nullified the guidelines reduction. While a district court must properly apply the guidelines, after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the resulting sentencing range is purely advisory and only one factor among many the district court considers in choosing the appropriate sentence. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008); 18 U.S.C. § 3553(a).

For all these reasons, Lundy has not shown that her total 69-month sentence is substantively unreasonable.

**AFFIRMED.**