[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11286
Non-Argument Calendar
_____

D.C. Docket No. 4:19-cr-00127-RSB-CLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DE'VON LE'EDWARD WALKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 19, 2020)

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

De'Von Le'Edward Walker appeals his 240-month sentence for Hobbs Act robbery. He argues that the district court's 78-month upward variance to the statutory maximum was procedurally and substantively unreasonable. After careful review, we affirm.

## I.

In 2019, Walker was charged in an indictment with Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count 1); using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). The indictment alleged that all three counts arose from a December 2018 robbery of an auto repair garage in Savannah, Georgia.

Walker pled guilty to Count 1, pursuant to a written plea agreement, and the government moved to dismiss the remaining charges at sentencing. In the plea agreement, the government agreed to recommend that the degree of injury suffered by the victim was between bodily injury and serious bodily injury, such that a three-level sentencing enhancement should apply.

Walker's presentence investigation report ("PSR") described his offense as follows. In December 2018, Walker, who was wearing a t-shirt over his face and brandishing a gun, approached Automotive Repair on Wheels near the close of business and demanded money from an employee, Marc Livingston. Livingston

went into the garage's business office and retrieved a bank bag, which fell to the floor when he tried to hand it to Walker. Walker then shot Livingston in the right shoulder, and a physical altercation ensued. During the struggle, Livingston removed the t-shirt from Walker's head and eventually gained control of the gun. Walker fled the garage with $130.

Security cameras at the garage captured the robbery, and Walker's family members, state probation officer, and federal probation officer all confirmed that Walker was the person captured on the video.

The PSR recommended a guideline imprisonment range of 130 to 162 months based on a total offense level of 27 and a criminal-history category of VI. In calculating the offense level, the PSR set the base offense level at 20. *See* U.S.S.G. § 2B3.1(a). The PSR then added seven levels because Walker discharged a firearm, *see id.* § 2B3.1(b)(2)(A), and three levels because the victim sustained a degree of injury between bodily injury and serious bodily injury, *see id.* § 2B3.1(b)(3)(D). Finally, the PSR applied a three-level reduction for acceptance of responsibility. *See id.* § 3E1.1.

The PSR also described Walker's criminal history. According to the PSR, Walker's criminal-history category of VI was based entirely on seven convictions for which the underlying conduct occurred between 2013 and 2015, when Walker was 18 to 21 years old. Of those, Walker had two prior state convictions for

carrying a concealed weapon. And in May 2016, Walker was sentenced in federal court to 30 months' imprisonment following a conviction for conspiracy to counterfeit U.S. currency. He committed the instant offense less than four months after being released from federal custody. And he faced four pending state charges for the offense here, as well as revocation of his state probation and federal supervised release.

The probation officer recommended a sentence of 145 months' imprisonment, noting that she applied a three-level injury enhancement based on the parties' agreement, but opining that Livingston's injury was serious enough to warrant a larger enhancement. She also noted that Walker received two criminal-history points for committing the offense while under supervision, but the Guidelines did not provide for additional points for being under both state parole and federal supervised release at the time of the offense.

Walker did not file any objections, and the district court adopted the PSR at sentencing.

At sentencing, the government presented video footage of the incident that had been captured on Automotive Repair's surveillance cameras. Livingston testified that it was "terrifying" to watch the video and "relive it all over again," and stated that he felt lucky to be alive.

The video, which did not have sound, showed the following.    At approximately 9:39 p.m. on the night of the robbery, Livingston was cleaning when Walker came inside with his entire head covered, pointed a gun at Livingston, and knocked him to the ground.  Livingston led Walker into an office, opened a file cabinet, and attempted to pass Walker a handful of bound bills and a bank bag, all while Walker had the gun pointed at his head or neck.  The bag dropped to the floor, and Walker shot Livingston.  A struggle ensued, during which Livingston removed Walker's head covering and gained control of Walker. With Livingston holding him from behind, Walker made several attempts to place a magazine into his firearm. At one point, Walker bent his arm behind him and pointed the gun at Livingston's abdomen. Almost simultaneously, Livingston brought Walker to the floor. They continued to struggle out of sight, and Livingston eventually led Walker out of the shop and turned him loose.

The district court asked Livingston if it saw correctly on the video that Walker was attempting to put a magazine into his firearm.  Livingston replied that, from what he could remember, the magazine had fallen from the gun before he was shot.  After Walker shot him with the bullet in the chamber, Walker had grabbed the magazine and tried to put it back into the gun.  He stated that part of his struggle was to keep Walker from reloading his weapon.

5

The government recommended a sentence at the high end of the guideline range, pointing out that Walker was only 25 years old and already had enough criminal history points to place him in the highest category. It argued that the video showed that Livingston had complied with Walker's instructions, yet he shot him once and tried to reload the gun to shoot him again.

Walker requested a sentence at the low end or middle of the guideline range. He noted that he was likely facing an additional 30 to 37 months of imprisonment from the revocation of his supervised release, as well as a sentence for the state charges arising from the instant offense. Walker personally addressed the court. He stated that he did not try to kill Livingston and when the gun went off, he got scared and tried to get away. He apologized to the victims, their families, and the court.

The district court stated that it had listened to the parties' arguments, read Walker's sentencing memorandum and the PSR, and considered the Guidelines and the facts of the case. It sentenced Walker to 240 months' imprisonment, to be served consecutively to any sentence imposed upon revocation of his state probation or his federal supervised release.

The district court stated that its sentence was an upward variance from the guideline range pursuant to the 18 U.S.C. § 3553(a) factors. It stated that the nature and circumstances of the offense were "chilling," explaining,

6

If you look at that video, I don't think it's all that unclear what happened. This is someone who came in with a loaded gun, pointed it in the face of a man that was just trying to do his job. It turned out to be—first, it was a crime of violence and greed, and then even after he shot him, it appears from the video that he tried to reload the firearm and shoot him again.

Next, it noted that Walker, despite his youth, had "amassed a significant criminal history," which got more serious as time went on. The court stated that many points in his history could have served as a "wake-up call," but instead he continued to display a disrespect for the law and for the safety of the community.

In further explanation, the district court stated that it imposed the sentence to reflect the seriousness of the offense, finding that the guideline range was "just wrong" and not reflective of Walker's offense conduct, despite the enhancements for his use of the firearm and for Livingston's injury. Next, the district court reasoned that its sentence would provide just punishment, would promote respect for the law and would provide both specific and general deterrence, and was necessary to protect the public. The court noted that it was troubled by Walker's history of firearm possession. Last, it observed that Walker had been on state probation and federal supervised release at the time of the offense and continued to disregard the law while still under sentence.

After the court imposed the 240-month sentence, Walker objected to the upward variance. He now appeals.

**II.**

7

On review, we ensure that a sentence is both free from significant procedural error and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of establishing that it is unreasonable. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). Significant procedural errors include failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, and failing to adequately explain the chosen sentence. *Id.* Review for substantive reasonableness involves examining the totality of the circumstances, including an inquiry into whether the § 3553(a) factors support the sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

## A.

Walker argues that the district court procedurally erred in several ways. He contends that the district court relied on its clearly erroneous finding that the video showed him attempting to shoot Livingston a second time, did not adequately explain its decision to vary upward, and did not consider all the § 3553(a) factors. Walker has not demonstrated procedural error.

## 1.

First, the district court did not rely on a clearly erroneous fact when it found that the surveillance video showed Walker attempting to shoot Livingston a second

8

time.[1]  A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction that a mistake has been made. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016).  The district court's choice between two permissible views of the evidence will rarely constitute clear error.  *Id.*

Here, the video shows, and Livingston confirmed in his testimony, that Walker repeatedly attempted to insert the dropped magazine back into his firearm after firing the bullet that was left in the chamber.  The video also shows Walker pointing the gun directly at Livingston's abdomen, although it is not clear whether Walker had successfully loaded the weapon at that point.  Walker argues that the district court was wrong to infer from his attempts to reload his weapon that he intended to shoot Livingston a second time.  But Walker had already shot Livingston once, Livingston subsequently overpowered and unmasked Walker, and Walker was trying to reload his weapon while actively fighting Livingston.  So we conclude that the district court's finding was a permissible view of the evidence, and we will not disturb it.  *See Cruickshank*, 837 F.3d at 1192.

**2.**

---

[1] The parties dispute whether Walker preserved a challenge to the district court's interpretation of the surveillance video.  Because we uphold the district court's finding under the more stringent clear-error standard, we need not decide whether plain-error review should apply.

Next, the record shows that the district court adequately considered the § 3553(a) factors and explained its reasons for varying upward.

At sentencing, the district court is required "to state in open court the reasons for its imposition of a particular sentence." 18 U.S.C. § 3553(c). In doing so, the district court need not provide detailed reasoning or make specific findings about the § 3553(a) factors. *United States v. Irey*, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc). Rather, the court's explanation must simply be adequate "to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The amount of explanation needed depends on the circumstances of each individual case. *Id.* If the district court chooses a sentence outside the guideline range, it should explain why the variance is appropriate in that particular case. *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015).

Here, the district court stated that it had considered the § 3553(a) factors and expressly discussed most of the factors, even though it was not required to make specific findings or explain its reasoning in great detail. *See Irey*, 612 F.3d at 1195. The court also extensively explained its reasons for varying upward when it addressed the "chilling" nature and circumstances of Walker's crime, Walker's disregard for the safety of the community and well-being of others, and Walker's

10

recidivism.    It elaborated that Walker did not seem deterred by his previous sentences and that a statutory maximum sentence may better deter him.    It also noted Walker had an "extremely troublesome" history of gun possession and that he had demonstrated a disregard for the law by committing the crime only four months after being released from federal custody and while still under federal and state sentences.    We are satisfied that the district court considered the § 3553(a) factors and the parties' arguments, had a reasoned basis for its chosen sentence, and adequately explained its decision to vary upward.    *See Rita*, 551 U.S. at 356; *Moran*, 778 F.3d at 983.

**B.**

As for substantive reasonableness, Walker has not shown that the district court abused its discretion by sentencing him to 240 months in prison or by failing to provide a substantial justification for its 78-month upward variance.    *See United States v. Hayes*, 762 F.3d 1300, 1307 (11th Cir. 2014) ("We review the substantive reasonableness of a sentence for abuse of discretion."); *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010) ("The district court has wide discretion to decide whether the section 3553(a) factors justify a variance.").

When reviewing for substantive reasonableness, we ordinarily will vacate a sentence only if we are left with "the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by

11

arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted). A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *Id.* at 1189. The district court has discretion to give more weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

If the district court determines that a sentence outside the guideline range is appropriate, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013). Even as to a substantial variance, we will not reverse a sentence unless we are left with "the definite and firm conviction" that the sentence is unreasonable. *Id.* (quotation marks omitted). We have upheld a variance to the statutory maximum as reasonable where the district court concluded that the variance was necessary to achieve the purposes set out in § 3553(a). *See United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016).

In imposing a variance, the district court may consider conduct that the probation officer already factored into the calculation of the guideline range.

12

*United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015). In *Johnson*, the defendant argued that the district court abused its discretion by varying upward when his conduct reflected a "run-of-the-mill" robbery and, therefore, the relevant factors were already captured by the Guidelines. *Id.* at 620. We held that the district court was permitted to consider the offense conduct in varying upward. *Id.* Even assuming that his robbery was "run of the mill," however, we held that the district court reasonably considered factors other than the defendant's offense conduct, including his criminal history and the need for deterrence. *Id.*

Here, Walker's sentence is substantively reasonable. First, contrary to Walker's arguments, the district court was within its discretion to give greater weight to some § 3553(a) factors—specifically, the nature and circumstances of the crime and his criminal history—than to others. *See Rosales-Bruno*, 789 F.3d at 1261.

Next, the district court provided a sufficiently compelling justification for its upward variance. *See Overstreet*, 713 F.3d 627, 636. Walker argues that his conduct reflected "typical armed robbery offense behavior" as contemplated by the Guidelines, and the district court improperly considered conduct that had already been factored into his guideline range. But even assuming that Walker engaged in no more than "typical armed robbery offense behavior," district courts may consider such conduct in imposing an upward variance. *See Johnson*, 803 F.3d at

13

619. Moreover, the district court outlined a number of ways that the guideline range did not account for Walker's conduct or criminal history, and it explained that the variance was based on Walker's offense conduct as well as on other factors, including his escalating criminal history, his history of firearm possession, and the fact that he had committed the instant offense while on state parole and federal supervised release. *See Johnson*, 803 F.3d at 620. Considering these factors in totality, the district court reasonably concluded that its upward variance, though significant, was necessary to achieve the goals of § 3553(a), including just punishment, specific and general deterrence, promotion of respect for the law, and the need to protect the public. *See* 18 U.S.C. § 3553(a); *Osorio-Moreno*, 814 F.3d at 1288. Walker has not shown that the district court committed a clear error in judgment in weighing the § 3553(a) factors, and we will not re-weigh them. *See Irey*, 612 F.3d at 1190. We affirm Walker's sentence.

**AFFIRMED.**