**AGILYSYS, INC., Plaintiff,**

v.

**Ken HALL and Solutions II, Inc., Defendants.**

**1:16–CV–3557–ELR**

United States District Court, N.D. Georgia, Atlanta Division.

Signed 05/25/2017

David W. Long–Daniels, Jonathan Michael Young, Mellori Evonn Lumpkin, Carranza Mothershed Pryor, Greenberg Traurig, LLP, Atlanta, GA, for Agilysys, Inc.

John David Hipes, Layne M. Kamsler, Hipes & Belle Isle, LLC, Alpharetta, GA, for Ken Hall.

Seth T. Ford, John Sikes Gibbs, III, Troutman Sanders LLP-ATL, Atlanta, GA, for Solutions II, Inc.

## ORDER

Eleanor L. Ross, United States District Judge

There are several matters before the Court. The Court's rulings and conclusions are set forth below.

## I. Background

On September 22, 2016, Plaintiff Agilysys, Inc. filed a complaint against Defendants Ken Hall and Solutions II, Inc. (Doc. No. 1). In addition, Plaintiff filed a Motion for a Temporary Restraining Order (Doc. No. 2) and a Motion for Expedited Discovery (Doc. No. 3). In an Order entered on October 5, 2016, the Court denied Plaintiff's Motion for a Temporary Restraining Order. (Doc. No. 9).

Thereafter, Defendants separately filed motions to dismiss (Doc. Nos. 10 & 11). Plaintiff subsequently responded to Defendants' motions to dismiss (Doc. Nos. 16 & 17) and filed an Amended Complaint (Doc. No. 18). Finally, Plaintiff filed a Motion for a Preliminary Injunction (Doc. No. 19). In an Order entered on November 22, 2016, the Court clarified that Plaintiff's Amended Complaint would now govern this action. (Doc. No. 29). As a result, the Court denied as moot Defendants' Motions to Dismiss and also denied Plaintiff's Motion to Expedite Discovery.

Subsequently, Defendants each moved to dismiss Plaintiff's Amended Complaint. (Doc. Nos. 26, 27). Meanwhile, the parties briefed Plaintiff's Motion for a Preliminary Injunction. Plaintiff then filed a Motion for Hearing requesting an expedited evidentiary hearing to resolve competing affidavits filed in conjunction with the preliminary injunction motion. (Doc. No. 42). As a

result, Defendants' Motions to Dismiss the Amended Complaint, Plaintiff's Motion for a Preliminary Injunction, and Plaintiff's Motion for Hearing are all now pending before the Court.

## II. Allegations in the Amended Complaint

As alleged in the Amended Complaint, Defendant Hall worked for Plaintiff for thirty-two (32) years, most recently as a Major Account Executive. "In his position as a Major Account Executive, Hall had control over, had access to, and gained extensive knowledge of, Agilysys's sales force, marketing programs, sales strategies, customer acquisition methods, sales figures, pricing information, existing contracts, and customer lists." Am. Compl. at 2. (Doc. No. 18). "In light of Hall's access to Agilysys's proprietary business information, Hall executed a Non–Disclosure Policy and Agreement (the 'Non–Disclosure Agreement')." Id. "Hall also agreed to abide by Agilysys's Code of Business Conduct (the 'Code of Conduct')" and "comply with Agilysys's Business Computing Policy and Guidelines (the 'Business Computing Policy')." Id. at 2–3.

Plaintiff alleges that on March 29, 30, and 31, 2016, Hall emailed Agilysys' trade secret, confidential, and/or propriety information from his Agilysys email account to his personal email account. This information included "Agilysys proposals for prospective customers and templates for proposals used to garner previous customer relationships." Id. at ¶ 39. Hall forwarded from his Agilysys email account to his personal email account, "information regarding customers' preferences, requests for proposal, requests for contract renewals, prior Agilysys orders and contracts, Agilysys proposals for prospective customers, and templates for proposals." Id. at ¶ 40.

Plaintiff asserts that on March 31, 2016, at 4:39 p.m., Hall emailed his supervisor to announce his resignation from employment with Agilysys. Prior to this time, Hall had accepted employment with Defendant Solutions II, a direct competitor of Agilysys.

On March 31, 2016, at 4:54 p.m., Hall sent customer information regarding client software and hardware systems from his Agilysys email account to his personal email account. After Hall's separation of employment, Agilysys received messages from customers addressed to Hall's Agilysys email account regarding proposals Hall sent after he had resigned.

Plaintiff alleges that Hall violated the Non–Disclosure Agreement, Code of Conduct, and Business Computing Policy by emailing Agilysys' trade secret, confidential, and proprietary information to his personal email account. Plaintiff alleges further that "Hall relied upon trade secret, confidential, and proprietary information received during his employment with Agilysys to induce Agilysys's customers and prospective customers into continuing contracts begun with Agilysys with Solutions II." Id. at ¶ 51. Plaintiff asserts that Hall has made defamatory statements and misrepresentations to Agilysys' existing and prospective customers. As a result, Agilysys alleges that it has lost customers.

Plaintiff brings several claims against Defendants as follows:

| Count | Title | Alleged Against Defendant |
|-------|-------|---------------------------|
| I | Violation of Computer Fraud & Abuse Act | Both Defendants |
| II | Violation of Defend Trade Secrets Act | Both Defendants |
| III | Violation of the Georgia Computer Systems Protection Act | Both Defendants |
| IV | Misappropriation of Trade Secrets pursuant to Georgia Trade Secrets Act | Both Defendants |
| V | Tortious Interference with Contract & Business Relations | Both Defendants |
| VI | Tortious Interference with Contract & Business Relations | Solutions II |
| VII | Breach of Fiduciary Duty | Hall |
| VIII | Breach of Employee Duty of Loyalty | Hall |
| IX | Breach of Contract - Non-Disclosure Obligations | Hall |
| X | Oral Defamation/Slander | Both Defendants |
| XI | Civil Conspiracy | Both Defendants |

## III. Defendants' Motions to Dismiss

Defendants now each move to dismiss all of these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); United States v. Stricker, 524 Fed.Appx. 500, 505 (11th Cir. 2013) (per curiam). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955); accord Fin. Sec. Assurance. Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007). Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face." ' Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.

As a preliminary matter, Defendants correctly point out that Plaintiff's response briefs were untimely filed. During the time that Plaintiff's response briefs were due, the three-day rule as applied to electronic filing was abolished. See FED. R. CIV. P. 6(d). Plaintiff filed its response briefs within the three-day rule. Technically, then, Plaintiff's briefs were untimely. However, given that the rule changed during the time after Defendants filed their motions, and given that the Court would prefer to rule on the merits rather than dismiss claims due to untimely response briefs, the Court will consider Plaintiff's response briefs. In addition, Defendants are correct that Plaintiff exceeded the page limit on its

response briefs, although these excess pages did not contain substantive arguments. Nevertheless, the Court cautions Plaintiff to abide by this Court's Local Rules, particularly with respect to page limits and times for filing, as this case moves forward. The Court will not accept any future filings that are untimely or that exceed the page limits.

### A. Count I—Violation of Computer Fraud & Abuse Act ("CFAA")— Both Defendants

 "The Computer Fraud and Abuse Act ("CFAA" or "the Act"), 18 U.S.C. § 1030, prohibits accessing a computer and obtaining information without authorization or by exceeding authorized access." Diamond Power Int'l, Inc. v. Davidson, 540 F.Supp.2d 1322, 1341 (N.D. Ga. 2007). "Although principally a criminal statute, the CFAA provides that 'any person who suffers damage or loss [as a result of a violation] ... may maintain a civil action ... for compensatory damages and injunctive relief or other equitable relief.' 18 U.S.C. § 1030(g)." Id.

### 1. Hall

 Plaintiff alleges in the Amended Complaint that "Hall knowingly and/or with intent to defraud Agilysys, accessed or used Agilysys's computer systems without authorization and/or in excess of his authorization to obtain information from a protected computer used in interstate commerce." Am. Compl. at ¶ 77. Therefore, Plaintiff contends that Hall has violated 18 U.S.C. § 1030(a)(4), which provides as follows: "[Whoever] knowingly and with intent to defraud, accesses a protected computer without authorization, or

exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value ... shall be punished." [1]

 To state a claim pursuant to § 1030(a)(4) Plaintiff must allege that Hall "(1) knowingly and with intent to defraud (2) accessed a protected computer (3) without authorization or exceeding authorized access (4) obtained anything of value, (5) causing a loss resulting in economic damages aggregating at least $5,000." IPC Sys., Inc. v. Garrigan, No. 1:11-CV-3910-AT, 2012 WL 12872028, at *6 (N.D. Ga. May 21, 2012). Defendants argue that Plaintiff's CFAA claim must fail because Hall did not access a protected computer without authorization and did not exceed any authorized access.

A person who accesses a protected computer "without authority" does so with no permission at all, like hackers, whom this statute was originally written to ward against; whereas, a person who "[e]xceeds authorized access" is one who "accesses a computer with authorization and ... us[es] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."

Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc., 690 F.Supp.2d 1267, 1272 (M.D. Ala. 2010). In other words, "a violation for accessing 'without authorization' occurs only where initial access is not permitted. And a violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted." Diamond Power Int'l, Inc., 540 F.Supp.2d at 1343.

However, the language Plaintiff used in the Amended Complaint aligns most closely with 18 U.S.C. § 1030(a)(4).

---

1. Plaintiff has not identified the specific section of CFAA that Defendants allegedly violated either in the Amended Complaint or in response to Defendants' Motions to Dismiss.

Quite simply, without authorization means exactly that: the employee was not granted access by his employer. Similarly, exceeds authorized access simply means that, while an employee's initial access was permitted, the employee accessed information for which the employer had not provided permission. Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc., 953 F.Supp.2d 1290, 1296 (S.D. Ga. 2013). The focus is on the employer's decision to allow an employee access to a computer and access to information. Id. at 1295. "More specifically, the proper inquiry is whether an employer had, at the time, both authorized the employee to access a computer and authorized that employee to access specific information on that computer." Id.

Accepting the allegations in the Amended Complaint as true, Plaintiff has failed to allege that Hall was not authorized to access the computers he used at Agilysys. See Am. Compl. at ¶ 20. This is true for the emails Plaintiff allegedly sent both before and after his resignation. Plaintiff has not alleged when, or if, it withdrew authorization for Plaintiff to use Agilysys' computers after Plaintiff announced his resignation.

However, as for "exceeds authorized access," the Court finds that Plaintiff has sufficiently alleged that Hall exceeded his authorized access. While Plaintiff appears to have given Hall access to its computer systems, including the internet, Plaintiff also placed restrictions on that access. Plaintiff's Business Computer Policy provided as follows: "Access to the Internet from an Agilysys business address or email accounts [i]s to be for Agilysys business related activity." Business Computing Policy (Doc. No. 18–5) at 5. According to this policy, Plaintiff authorized Hall to access the internet from his Agilysys email account for conducting Agilysys business-related activity. Plaintiff gave Hall authority to use a computer for certain purposes but not for others. Plaintiff alleges in the Amended Complaint that Hall used his work email account to send himself Agilysys information at his personal email account and that this was not for an Agilysys business-related purpose. Plaintiff's policy on internet access could be interpreted in various ways, and while the Court expects in the future that the attorneys in this case will debate linguistics and the policy's meaning and enforcement, the Court must accept the allegations in Amended Complaint as true. Doing so, the Court finds that Plaintiff has sufficiently pled facts to state a plausible claim.

The parties have hotly debated this issue. The Court recognizes the split in this District as well as across the Circuits regarding the broad and narrow views of the CFAA and the *use* of information versus the *access* to information. See, e.g., United States v. Valle, 807 F.3d 508, 523–28 (2d Cir. 2015) (recognizing the circuit split and noting that this sharp division means that the statute is readily susceptible to different interpretations). Under a narrower view, Courts "reject any inquiry into an individual's purposes for accessing information, instead asking only whether the individual had any sort of permission to access whatever information he or she accessed." Cloudpath Networks, Inc. v. SecureW2 B.V., 157 F.Supp.3d 961, 980 (D. Colo. 2016). Under a broader view, Courts have held "that an improper purpose may cause someone to lose permission even if he or she would retain such permission for proper purposes." Id. The Court is very persuaded by courts which have taken a narrow view of the CFAA. See id. at 972–983 (D. Colo. 2016) (in depth look at the different circuit opinions and concluding that the narrow view satisfies Congress' intent; the CFAA "applies only to individ-

uals who are allowed to access a company computer and use that access to obtain data they are not allowed to see for any purpose"); Power Equip. Maint., Inc., 953 F.Supp.2d at 1295–98; Enhanced Recovery Co., LLC v. Frady, No. 3:13-CV-1262-J-34JBT, 2015 WL 1470852, at *5–11 (M.D. Fla. Mar. 31, 2015).

However, in this particular case, Plaintiff has alleged that it limited Hall's *access* to the internet, not just his use. Moreover, the Court is constrained by the Eleventh Circuit Court of Appeals' broad view of the CFAA, particularly where the employer has limited an employee's access. United States v. Rodriguez, 628 F.3d 1258, 1261 (11th Cir. 2010). In Rodriguez, an employee of the Social Security Administration ("SSA") appealed his conviction under § 1030(a)(2)(B) of the CFAA for accessing sensitive personal information on certain individuals via the SSA's computer systems. 628 F.3d at 1260. SSA had established a policy that prohibited an employee from obtaining information from its databases without a business reason. Id. The appellate court upheld the CFAA conviction because the employee accessed personal information that was not related to SSA's business purposes. Id. at 1263. While distinguishing the facts before it from other cases, the appellate court specifically noted that the employer informed the employee that he was not "authorized

to obtain personal information for non-business reasons." Id. "Thus, when the employer expressly limits its employee's authority to access its computers for business related purposes, the purpose for which an employee accesses information on a computer is relevant to determining whether the employee exceeded his authority in violation of the CFAA under the law of this Circuit post-Rodriguez." IPC Sys., Inc. v. Garrigan, No. 1:11-CV-3910-AT, 2012 WL 12872028, at *6 (N.D. Ga. May 21, 2012).

While this case is not a criminal action like Rodriguez, the facts here are similar in that Agilysys had a policy that authorized Hall to access the internet for business purposes only. And Plaintiff alleges that Hall exceeded this authorization when he accessed the internet to send Agilysys information to his personal email account.[2] See Rodriguez, 628 F.3d at 1263 (company policy restricted employee's authorization to access certain information and the employee admitted that he accessed the information); IPC Sys., Inc., 2012 WL 12872028, at *6 (relying on Rodriguez and denying dismissal of CFAA claim because fact questions remained about the purpose for which an employee accessed information and whether the employee exceeded his authorized access); cf. Aquent LLC v. Stapleton, 65 F.Supp.3d 1339, 1346 (M.D.

---

**2.** The courts debating this issue refer oftentimes to the practical implications of viewing the CFAA so broadly. The Court is troubled by the practical implications of Agilysys' policy here. Pursuant to Agilysys' policy, Hall would be liable under the CFAA for every time in his 32 years of employment, that the policy was in place, he accessed the internet for a non-business purpose. This would include checking the news, sports scores, weather, or even an emergency alert. Every other employee of Agilysys would also be liable for the same. See Valle, 807 F.3d at 527 (discussing courts that have recognized the problems with an broad view of the CFAA; a broad view would

mean that "any employee who checked the latest Facebook posting or sporting event scores in contravention of his employer's use policy would be subject to the instantaneous cessation of his agency and, as a result, would be left without any authorization to access his employer's computer systems") (quotation omitted). After a review of the court split and the legislative history of the CFAA, the Court does not believe that Congress intended the CFAA to cover such situations. Nevertheless, as noted above, the Court is limited by the Rodriguez opinion and by the Rule 12(b)(6) standard at this early stage of the case.

Fla. 2014) (finding company policy that required the employee to keep information confidential and to use information for business purposes only akin to the policy in Rodriguez and concluding that the plaintiff stated a claim under the CFAA that the employee exceeded her authorization).

Additionally, Defendants argue that Plaintiff's claim must fail because the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to Plaintiff's claim under § 1030(a)(4) and that Plaintiff has failed to meet the 9(b) standards. While the Eleventh Circuit has not taken a position about whether § 1030(a)(4) requires a heightened pleading standard, there is a split among the courts. 1 Data Sec. & Privacy Law § 9:18, "Pleading requirements under the CFAA, (2016) ("There is a split in authority regarding whether Plaintiffs must allege a CFAA claim with particularity under Federal Rule of Civil Procedure 9(b)."); see Sprint Nextel Corp. v. Simple Cell, Inc., No. CIV. CCB-13-617, 2013 WL 3776933, at *6 (D. Md. July 17, 2013) ("The balance of authority, however, appears to support the view that Rule 9(b) does not apply to § 1030(a)(4)"); Motorola, Inc. v. Lemko Corp., 609 F.Supp.2d 760, 765 (N.D. Ill. 2009) ("Rule 9(b)'s requirement ... quite plainly applies to section 1030(a)(4)'s requirement that the defendant's acts further the intended fraud.").

Nevertheless, the Eleventh Circuit has instructed that "[b]ecause fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (quotations and citation omitted). Plaintiff pleaded facts as to the time, place, and substance of Hall's allegedly fraudulent acts. After a review of the Amended Complaint, the Court finds that Plaintiff has sufficiently pled its § 1030(a)(4) claim to give Hall fair notice of the CFAA claim against him and reasonably notified him of his role in the fraud.

Finally, Plaintiff has sufficiently alleged that Hall's actions caused Plaintiff a loss resulting in economic damages aggregating at least $5,000. Therefore, the Court finds that Plaintiff has stated a plausible claim against Hall for violation of § 1030(a)(4) of the CFAA.

### 2. Solutions II

As for a CFAA claim against Solutions II, Plaintiff asserts that Solutions II induced or directed Hall to access Agilysys' protected information or that Solutions II and Hall acted in concert and conspired to improperly access Agilysys' information. Am. Compl. at ¶¶ 80–82. Thus, Plaintiff contends that Defendants have conspired to violate CFAA in violation of 18 U.S.C. § 1030(b). Id. ("Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.").

The Amended Complaint is devoid of facts to support these claims. There are no facts showing that Solutions II induced or even directed Hall to take actions while still at Agilysys before he began working for Solutions II. Schlumberger Tech. Corp. v. McReynolds, No. CV 15-2455, 2016 WL 4597627, at *5 (W.D. La. Sept. 1, 2016) (even assuming that the defendant could be vicariously liable, the only basis that the defendant directly encouraged or ratified the actor's conduct was that the actor later became the defendant's employee shortly after he resigned employment with the plaintiff; this was insufficient). Even if Plaintiff had alleged sufficient facts to show that Solutions II directed or induced Hall to act, the CFAA states that the

person who has suffered damage or loss by a violation of the CFAA may maintain a civil action against the "violator." 18 U.S.C. § 1030(g). Plaintiff has alleged that Hall was the individual who acted,. or was the violator, not Solutions II. Indeed, Solutions II did not access Agilysys' computers, and therefore, Solutions II may not be held liable as the violator under the CFAA. See Power Equip. Maint., Inc., 953 F.Supp.2d at 1297 (where the defendant allegedly had an assistant print a confidential contract, failure to state a CFAA claim ,because there was no allegation that the defendant, rather than the assistant, accessed the Plaintiff's computers and the CFAA requires that the individual actually access the information, not merely receive it from a third party"); Doe v. Dartmouth–Hitchcock Med. Ctr., No. CIV. 00-100-M, 2001 WL 873063, at *6 (D.N.H. July 19, 2001) ("neither the language nor the purpose of the CFAA are consistent with holding the . . . defendants vicariously liable").

■ Furthermore, as to § 1030(b), a "claim under section (b) requires evidence of an agreement and common activities in furtherance of the unlawful act." Welenco, Inc. v. Corbell, 126 F.Supp.3d 1154, 1176 (E.D. Cal. 2015) (collecting various cases holding the same); Trademotion, LLC v. Marketcliq, Inc., 857 F.Supp.2d 1285, 1294 (M.D. Fla. 2012). There is no allegation supported by facts that Hall and Solutions II entered into an agreement for Hall to commit the unlawful act of accessing information beyond authorization. Therefore, the Court finds that Plaintiff has failed to state claim under the CFAA against Solutions II. Only a CFAA claim against Hall will proceed.

## B. Count IX—Breach of Contract—Non–Disclosure Obligations—Defendant Hall

■ Hall moves to dismiss Plaintiff's claim for breach of contract. Plaintiff contends that Hall breached the Non–Disclosure Agreement. Hall argues that the Non–Disclosure Agreement is unenforceable because it lacks a time limitation. Plaintiff responds that contracts regarding trade secret information are not unenforceable simply because they lack a time limitation. Hall replies that the information covered by the Non–Disclosure Agreement is not a trade secret.

■ "A nondisclosure clause with no time limit is unenforceable as to information that is not a trade secret." Holland Ins. Grp., LLC v. Senior Life Ins. Co., 329 Ga. App. 834, 838, 766 S.E.2d 187 (2014). Therefore, whether the Non–Disclosure Agreement here is unenforceable for lacking a time limit turns on whether the information is a trade secret.

Accordingly, the Court must determine if Plaintiff has alleged that the information in the Non–Disclosure Agreement is a trade secret and whether Hall took trade secret information. The Georgia Trade Secrets Act ("GTSA") defines a trade secret as follows:

(4) "Trade secret" means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

(A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and,

(B) Is the subject of efforts that are reasonable under the circumstances, to maintain its secrecy.

O.C.G.A. § 10–1–761(4). The Non–Disclosure Agreement covers technical and business information including customer lists (including contacts, addresses, and phone numbers), account assignments and customer data, customer forecasts, notes, records, business contacts, quotes, sales orders, and financial statements of any kind. Non–Disclosure Agreement at 1–2 (Doc. No. 18–3). Plaintiff alleges in the Amended Complaint that this was trade secrets and confidential and proprietary information. Am. Compl. ¶ 23. Plaintiff alleges in the Amended Complaint that Hall took "customer contact information, information regarding account assignments and customer data regarding projected needs and opportunities, quotes, sales orders, and documentation pertaining to Agilysys's responses to solicitation for work." Am. Compl. ¶ 187. Plaintiff also alleges that Hall accessed and disclosed Agilysys' "customer identification, customer purchasing history, pricing information, sales proposal information, and proposal templates." Id. at ¶ 189.

Viewing the allegations in the Amended Complaint as true, the Court finds that Plaintiff has sufficiently alleged that Hall accessed and disclosed information prohibited by the Non–Disclosure Agreement, which could qualify as a trade secret. The Court recognizes that the Non–Disclosure Agreement refers to this information as "confidential" rather than specifically a trade secret. Non–Disclosure Agreement at 1–2 (Doc. No. 18–3). However, it is a fact question whether the information qualifies under § 10–1–761(4) as a trade secret. While facts may be discovered to show that this information was not actually a trade secret but rather confidential information, the Court finds that Plaintiff's allegations at this time are sufficient to state a plausible claim. See Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc., 216 Ga. App. 35, 37, 453 S.E.2d 488 (1994) (distinguishing between confidential information and trade secrets and the effect of a durational limit).

Having found at this stage that the information is a trade secret, Hall's argument that the Non–Disclosure Agreement is unenforceable because it lacks a time limit must fail. Instead, "a contractual duty to maintain a trade secret or limit use of a trade secret shall not be deemed void or unenforceable solely for lack of a durational or geographical limitation on the duty." O.C.G.A. § 10–1–767(b). See Opteum Fin. Servs., LLC v. Spain, 406 F.Supp.2d 1378, 1381 (N.D. Ga. 2005) ("Although a nondisclosure clause with no time limit is unenforceable as to information that is not a trade secret, the GTSA carves out an exception for written agreements that do not contain a time limit for maintaining the trade secret."). Therefore, the Court will not dismiss Plaintiff's breach of contract claim based on the Non–Disclosure Agreement against Hall.

## C. Count IV—Misappropriation of Trade Secrets pursuant to Georgia Trade Secrets Act—Both Defendants

Defendants move to dismiss Plaintiff's claim for misappropriation of trade secrets pursuant to the GTSA. "Under [the GTSA] O.C.G.A. §§ 10–1–760 et seq., a claim for misappropriation of trade secrets requires a plaintiff to prove that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret." Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1290–91 (11th Cir. 2003) (quotation omitted). The GTSA defines "misappropriation" as follows:

(2) "Misappropriation" means:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of a trade secret;

(ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.C.G.A. § 10–1–761(2).

### 1. Hall

■ Hall moves to dismiss Plaintiff's misappropriation claim, arguing that Hall did not acquire the information by improper means or under circumstances giving rise to a duty to maintain the information's secrecy. The Court agrees with Hall that he did not acquire the information by improper means because he was authorized by Plaintiff to access Agilysys' trade secrets. See *supra*. However, as noted above, the Court has found at this stage that the Non–Disclosure Agreement was enforceable, contrary to Hall's arguments. And a non-disclosure agreement can be the basis for imposing a duty not to disclose a trade

secret. See Penalty Kick Mgmt. Ltd., 318 F.3d at 1292. Therefore, Plaintiff maintains that Hall misappropriated the trade secrets because the Non–Disclosure Agreement provided a duty to maintain the secrecy of the information. Upon review of the Amended Complaint, Plaintiff has alleged that Hall used and disclosed Agilysys' trade secrets, and that at the time, Hall knew he had acquired the trade secrets improperly, in violation of the Non–Disclosure Agreement. Therefore, the Court finds that Plaintiff's GTSA claim against Hall may proceed.

### 2. Solutions II

■ Additionally, Plaintiff maintains that Solutions II is liable for misappropriation of trade secrets. Pursuant to O.C.G.A. § 10–1–761(2), to show that Solutions II misappropriated Agilysys' trade secrets, Plaintiff must demonstrate that Solutions II disclosed or used Agilysys' trade secrets and at the time of disclosure or use, Solutions II knew or had reason to know that the knowledge of the trade secrets was acquired by Hall under circumstances giving rise to a duty to maintain its secrecy or limit its use, or the knowledge of the trade secrets was derived from or through Hall, who owed a duty to Agilysys.

Plaintiff asserts in the Amended Complaint that Hall and Solutions II disclosed and utilized Agilysys' trade secrets. Am. Comp. at ¶ 123. Plaintiff asserts further that Solutions II knew the disclosures and utilization were illegal and violated Agilysys' Non–Disclosure Agreement. Id. at ¶ 125. In addition, Plaintiff alleges that Solutions II was aware of Hall's duties under the Non–Disclosure Agreement at the time it hired Hall. Id. at ¶ 79. Plaintiff contends that Solutions II hired Hall with full knowledge of Hall's possession of, and access to, Plaintiff's trade secret information. Id. at ¶ 210.

Plaintiff has not alleged facts in the Amended Complaint to support its allegations that Solutions II knew or had reason to know that the information was protected under a Non–Disclosure Agreement, giving rise to a duty by Hall to maintain the secrecy of the information. Instead, the Court finds that Plaintiff has made conclusory allegations about what Solutions II knew.

Separately from a duty arising under the GTSA in O.C.G.A. § 10–1–761(2), Plaintiff also asserts throughout the Amended Complaint that Hall and Solutions II had an agency relationship, giving rise to Solutions II's liability. Solutions II moves to dismiss Plaintiff's claims based on any agency theory, arguing that Solutions II has made conclusory allegations without any facts.

■ "Under Georgia law, an agency relationship can arise in three distinct ways: expressly, by implication, or through subsequent ratification by the principal of the agent's conduct." J'Carpc, LLC v. Wilkins, 545 F.Supp.2d 1330, 1337 (N.D. Ga. 2008) (citing O.C.G.A. § 10–6–1). In response to Solutions II's Motion to Dismiss, Plaintiff alleges that an agency relationship between Hall and Solutions II arose by ratification.

■ "An agency relationship can … be created by ratification, when a principal subsequently ratifies the acts of another in his behalf. For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act." Id. at 1338 (quotation omitted).[3]

Plaintiff has not sufficiently pled facts to show that Solutions II knew of Hall's unauthorized takings or knew that the information Hall allegedly misappropriated was protected trade secret information. "[Ratification necessarily implies complete knowledge of all the material facts relating to the transaction." Hyer v. Citizens & S. Nat. Bank in Macon, 188 Ga.App. 452, 453, 373 S.E.2d 391 (1988). "A ratification by the principal shall relate back to the act ratified and shall take effect as if originally authorized." O.C.G.A. § 10–6–52. Plaintiff contends that Hall emailed Agilysys' proprietary information when he was still at Agilysys. There are no facts about when, or if, Solutions II knew that Plaintiff was emailing information. Furthermore, Plaintiff has not asserted facts to show that after Solutions II began employing Hall, Solutions II learned of Hall's alleged illegal takings and continued to use the information with full knowledge of these facts. Therefore, the Court finds that Plaintiff has failed to plead a claim against Solutions II based on an agency theory.[4]

**3.** Solutions II contends that Plaintiff has failed to plead facts in the Amended Complaint showing how it benefited from any of Hall's alleged conduct. While at some points in the Amended Complaint Plaintiff has pled in conclusory terms that Solutions II benefited from Hall's actions, Plaintiff has pled in other parts of the Amended Complaint more facts to sufficiently allege that Solutions II benefitted. Compare Am. Comp. at ¶ 57 ("Hall has exploited his position with Agilysys to misappropriate Agilysys's trade secret, confidential, and proprietary information for his benefit and the benefit of Solutions II.") with ¶ 102 ("Indeed, Hall and Solutions II have

used misappropriated trade secret information to ascertain the identity of Agilysys's existing and prospective customers and to solicit those existing and prospective customers using trade secret information regarding those customers' product needs, order history, and order preferences.").

**4.** Plaintiff's Amended Complaint is peppered with phrases that appear to impose liability on Solutions II based on an agency theory. Such phrases are conclusory. To be clear, for the reasons stated above, and given the conclusory pleading of such an agency theory, the Court finds that Plaintiff has failed to

In sum, Plaintiff's GTS A claim for misappropriation will proceed against Hall but is dismissed against Solutions II.

### D. Count II—Violation of Defend Trade Secrets Act—Both Defendants

Hall moves to dismiss Plaintiff's claim for misappropriation pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.* Hall contends that the DTSA became effective on May 11, 2016, and does not apply retroactively. Hall asserts further that the DTSA treats a continuing misappropriation as one misappropriation. Therefore, Hall argues that Plaintiff's claims against him are barred because the alleged misappropriation commenced in March 2016, two months before the DTSA was enacted. Plaintiff responds that its claims are not barred because Hall's continued use, possession, and disclosure of Plaintiff's proprietary information after May 11, 2016, constitutes actionable misappropriation.

▉ The DTSA creates a private cause of action for an "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "Pursuant to DTSA, prohibited 'misappropriation' includes both the acquisition of a trade secret and its disclosure." Adams Arms, LLC v. Unified Weapon Sys., Inc., No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *5 (M.D. Fla. Sept. 27, 2016); see 18 U.S.C. § 1839(5)(A)–(B).

▉ There are two actions at play here: Hall's alleged acquisition of Agilysys' information and Hall's subsequent use

and disclosure of that information. Hall is correct that under an acquisition theory, Plaintiff's claims are barred because Plaintiff alleges that Hall acquired the information prior to the enactment of the DTSA and the DTSA does not provide for retroactive applicability. See Adams Arms, LLC, 2016 WL 5391394, at *7 (no claim against the defendants based on acquisition because the facts indicated that the defendants acquired all information prior to the May 2016 effective date of the DTSA).

▉ However, as for Hall's use and disclosure of Agilysys' information, Hall maintains that such a claim is barred because a continuing misappropriation constitutes a single claim; thus, any alleged illegal acts by Hall began before the DTSA effective date and continued after the effective date, constituting a single claim. Hall relies on 18 U.S.C. § 1836(d) in support, which provides for a three-year statute of limitations period, and states specifically that "[f]or purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d). This plain language shows that a continuing misappropriation constitutes only a single claim "for purposes of [that] subsection" relating to the statute of limitations. Yet, Plaintiff's theories against Hall under the DTSA do not rely on a statute of limitations argument. Instead, Plaintiff contends that Hall has violated the DTSA by misappropriating both before the DTSA effective date (acquisition) and after (use and disclosure). The DTSA specifies that it applies "to any misappropriation of a trade secret ... for which any act occurs on or after the effective date." Defend Trade Secrets Act of 2016, Pub. L. No. 114–153, § 2(e), 130

---

plead an agency theory to hold Solutions II liable on any claim asserted in the Amended

Complaint.

Stat. 376 (2016). "At the least, this language suggests that when an 'act' occurs after the effective date, a partial recovery is available on a misappropriation claim. Adams Arms, LLC, 2016 WL 5391394, at *6. Therefore, the Court finds Hall's theory that a continuing misappropriation constitutes a single claim unavailing. See id. (rejecting the defendants' theory that the DTSA treats a continuing misappropriation as a single misappropriation based on the limiting language in § 1836(d) and instead finding that an owner may recover under the DTSA if any act of misappropriation occurs after the effective date).

Plaintiff alleges that Hall used and disclosed Agilysys' protected information after the May 2016 effective date. Therefore, the Court finds that Plaintiff has sufficiently stated a DTSA claim against Hall. See id. (not dismissing DTSA claim where the plaintiff alleged that the defendants signed contracts in late May or early June 2016 and the contracts used protected information); see also Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp., No. CV 16-2499, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017) (the plaintiff may pursue its DTSA claim because the amended complaint alleged multiple uses of the trade secrets that continued to occur after the DTSA effective date); Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (no dismissal of DTSA claim where wrongful act was alleged to occur after the date of enactment of the DTSA).

Defendants maintain that the analysis for a DTSA claim is the same as for a claim pursuant to the GTSA. Therefore, having found that Plaintiff's GTSA claim will proceed against Hall, Plaintiff's DTSA claim will also proceed against Hall. Similarly, because the Court has dismissed Plaintiff's GTSA claim against Solutions II, the Court will dismiss the DTSA claim against Solutions II.

### E. Count III—Violation of the Georgia Computer Systems Protection Act—Both Defendants

▮▮▮ Defendants move to dismiss Plaintiff's claim based on the Georgia Computer Systems Protection Act ("GCSPA"), O.C.G.A. § 16–9–93, because this claim relies on the same facts as the GTSA claim and is therefore preempted by the GTSA. The GTSA supersedes all conflicting tort, restitutionary, and other laws providing for civil remedies for misappropriation of a trade secret. O.C.G.A. § 10–1–767(a). The "GTSA preempts claims that rely on the same allegations as those underlying the Plaintiff's claim for misappropriation of a trade secret." Robbins v. Supermarket Equip. Sales, LLC, 290 Ga. 462, 466, 722 S.E.2d 55, 58 (2012) (quotation omitted). The "key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the GTSA." Id. at 466–67, 722 S.E.2d 55, 58.

After a review of the Amended Complaint, the Court finds that Plaintiff relies on the same factual allegations of misappropriation for its GCSPA claim and its GTSA claim, namely, that Hall used Plaintiff's computer system without authorization or in excess of his authorization to misappropriate Plaintiff's proprietary information. See RLI Ins. Co. v. Banks, No. 1:14-CV-1108-TWT, 2015 WL 400540, at *2 (N.D. Ga. Jan. 28, 2015) (dismissing GCSPA claim because it was based on the same misappropriation of confidential information); Earthcam, Inc. v. Oxblue Corp., No. 1:11-CV–02278–WSD, 2012 WL 12836518, at *11 (N.D. Ga. Mar. 26, 2012) (same). Any claim against Defendants based on the GCSPA is dismissed.

## F. Count VII—Breach of Fiduciary Duty & Count VIII—Breach of Employee Duty of Loyalty—Defendant Hall

Hall moves to dismiss Plaintiff's claims for breach of a fiduciary duty and breach of employee duty of loyalty because these claims rely on the same facts as the GTSA claim. After a review of the Amended Complaint, the Court finds that Plaintiff relies on the same factual allegations of misappropriation for its breach of fiduciary duty and breach of employee duty of loyalty claims and its GTSA claim, namely, that Hall disclosed, used, and misappropriated Agilysys' trade secret information. See RLI Ins. Co., 2015 WL 400540, at *2 (dismissing breach of fiduciary duty claim because it was based on the same misappropriation of confidential information); Earthcam, Inc., 2012 WL 12836518, at * 11 (same).

■ Plaintiff contends that its breach of fiduciary duty and breach of employee duty of loyalty claims are also premised on acts that fall outside the ambit of GTSA in that Hall, while still employed with Agilysys, solicited Agilysys' existing and potential customers for the benefit of Solutions II. However, Plaintiff has failed to plead any facts to support these conclusory allegations. In setting forth the facts of its claims, Plaintiff did not allege that Hall was soliciting customers for the benefit of a third party before he resigned. Moreover, having found that Plaintiff's breach of fiduciary claim is to be dismissed, Plaintiff's breach of employee duty of loyalty must also fail because "a cause of action against an employee for breach of loyalty must be based upon a fiduciary duty owed by the employee and must rise and fall with any claim for breach of fiduciary

duty." Hanson Staple Co. v. Eckelberry, 297 Ga.App. 356, 359, 677 S.E.2d 321, 324 (2009) (quotation omitted). Therefore, any claim against Hall based on a breach of a fiduciary duty or a breach of employee loyalty is dismissed.

## G. Count X—Oral Defamation/Slander—Both Defendants

Defendants move to dismiss Plaintiff's defamation or slander claim, arguing that Plaintiff fails to state a claim for defamation or slander per se and Plaintiff fails to plead special damages.

■ First, slander per se includes "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51–5–5–4(a)(3)); Bellemead, LLC v. Stoker, 280 Ga. 635, 637, 631 S.E.2d 693 (2006).[5]

> The kind of aspersion necessary to come under this phase of the rule of slander per se must be one that is especially injurious to the Plaintiff's reputation because of the particular demands or qualifications of Plaintiff's vocation.... [T]he words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession.

Id. (quotation omitted). The "court looks to the plain import of the words spoken in order to ascertain whether the words constitute slander per se." Id. (quotation omitted). To state a claim for slander per se, the plaintiff need not plead special dam-

---

**5.** Slander per se may also "consist[ ] of a charge that one is guilty of a crime, dishonesty or immorality," but there are no such allegations here. Garner v. Acad. Collection Serv., Inc., No. CIV.A.3:04-CV-93-JTC, 2005 WL 643680, at *4 (N.D. Ga. Mar. 11, 2005).

ages. McGee v. Gast, 257 Ga.App. 882, 883, 572 S.E.2d 398 (2002).

In support of its slander per se claim, Plaintiff alleges that Hall "has stated and continues to state to Agilysys's existing customers and prospective customers that Agilysys is no longer in the business of selling IBM hardware or IBM solutions for such hardware." Am. Compl. at ¶ 198. Plaintiff also alleges that "Hall has made false statements to Agilysys's customers and prospective customers regarding Agilysys's capacity to meet customer needs with respect to iSeries and IBM hardware and solutions." Id. at ¶ 199. The Court finds that these "words at issue cannot support a claim for slander per se since they are not recognizable as injurious on their face and do not, on their face, cast aspersions on [Plaintiff's] reputation because of the particular demands or qualifications of [it's] profession." Bellemead, LLC, 280 Ga. at 639, 631 S.E.2d 693 (finding no slander per se where the defendant allegedly said that the plaintiff would not be selling lots much longer because the plaintiff was leaving the area and suggesting that the buyer should buy lots from the defendant instead); see B & F Sys., Inc. v. LeBlanc, No. 7:07-CV-192 HL, 2011 WL 4103576, at *30 (M.D. Ga. Sept. 14, 2011) (statements that the plaintiff was out of business did not constitute slander per se because they did not imply any dishonest or discreditable conduct on the Plaintiff's part).

■ Second, Defendant moves to dismiss Plaintiff's defamation claim on the ground that Plaintiff did not plead special damages. "Defamation not amounting to slander per se . . . requires proof of special damages." Garner v. Acad. Collection Serv., Inc., No. CIV.A.3:04-CV-93-JTC, 2005 WL 643680, at *4 (N.D. Ga. Mar. 11, 2005); see O.C.G.A. § 51–5–4(b). "These special damages must be the loss of money, or of some other material temporal

advantage capable of being assessed in monetary value." Zarach v. Atlanta Claims Ass'n, 231 Ga.App. 685, 689, 500 S.E.2d 1, 5 (1998). "The loss of employment, income or profits is categorized as special damages and is sufficient injury upon which to predicate an action for" slander. Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 33 (5th Cir. 1973); see Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1377 (N.D. Ga. 2004). Federal Rule of Civil Procedure 9(g) requires Plaintiffs to assert and plead special damages with particularity.

Plaintiff alleges generally that it suffered damages in an amount to be determined at trial. Am. Compl. at ¶ 204. More specifically, however, Plaintiff alleges that it suffered special damages, including loss of revenue, sales, and customer contracts and relationships. Id. at ¶ 205. Viewing the allegations in the Amended Complaint as true, the Court finds that Plaintiff has sufficiently pled special damages because it has alleged that it has suffered a loss of money in the form of lost revenue and sales. A loss of customer contracts may also be assessed in monetary value. Therefore, Plaintiff's claims for oral defamation/slander may proceed against Hall.

■ As for Solutions II, Plaintiff does not allege that Solutions II made any defamatory statements. Instead, Plaintiff seeks to attach liability to Solutions II based on Hall being Solutions II's agent. "Under general principles of tort law, the doctrine of respondeat superior does not apply in slander cases, and a principal is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff." Exec. Excellence, LLC v. Martin Bros. Investments, LLC, 309 Ga.App. 279, 291–

92, 710 S.E.2d 169 (2011) (quotation omitted). Plaintiff alleges that "Solutions II, as Hall's employer, has directed, authorized and/or ratified Hall's defamatory statements to Agilysys's existing and prospective customers." Am. Comp. at ¶ 201. Plaintiff also alleges that "Hall, as an agent of Solutions II," purposely made untrue statements. Id. at ¶ 202–203. Plaintiff has not asserted any facts to support the theory that Solutions II expressly directed or authorized Hall to speak, and instead, Plaintiff's allegations are conclusory.

Furthermore, regarding Plaintiff's contention that Solutions II ratified Hall's defamatory statements, as noted above, "[f]or ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act." J'Carpc, LLC, 545 F.Supp.2d at 1338 (quotation omitted). Plaintiff has not alleged any facts to support that Solutions II knew of Hall's alleged untrue statements, and with full knowledge of these facts, that Solutions II accepted and retained the benefits of Hall's defamatory actions. Moreover, Plaintiff has not sufficiently pled the benefits Solutions II apparently retained as a result of Hall's defamatory statements. Plaintiff states vaguely that Hall made the "untrue statements" for "the benefit of Solutions II to generate sales and revenue to Agilysys's detriment." Am. Compl. at ¶ 202. This is conclusory and insufficient. Therefore, Plaintiff has failed to plead a claim for oral defamation/slander against Solutions II because Plaintiff has not alleged sufficient facts to state a plausible claim that Solutions II is liable as the principal of Hall. In sum, Plaintiff's claim for oral defamation / slander will proceed solely against Hall.

### H. Count V—Tortious Interference with Contract & Business Relations—Both Defendants

Plaintiff's claims for tortious interference with a contract and business relations are two separate claims, despite being lumped together. Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1407 (11th Cir. 1998) ("tortious interference with contract and business relationships state two independent but related claims"); Sweeney v. Athens Reg'l Med. Ctr., 709 F.Supp. 1563, 1577 (M.D. Ga. 1989). They require proof of different elements. Camp Creek Hosp. Inns, Inc., 139 F.3d at 1407. For the tortious interference with a contract claim, "a plaintiff must establish the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury." Atlanta Mkt. Ctr. Mgmt., Co. v. McLane, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998). Plaintiff has not alleged that there were any valid contracts with which Defendants interfered or asserted any facts to support specific contracts. Therefore, the Court will dismiss any tortious interference with contracts claim against both Defendants.

Instead, Plaintiff alleges that Defendants interfered with Plaintiff's "business relationships." See, e.g., Am. Compl. at ¶ 136. Defendants move to dismiss this claim because Plaintiff relies on the same facts to support its tortious interference with business relations claim as the GTSA claim. Plaintiff's tortious interference with business relations claim is premised on Hall relying on his alleged misappropriation of trade secrets and confidential information to lure customers away from Agily-

sys and to Solutions II.[6] These are the same factual allegations underlying Plaintiff's GTSA claim, and therefore, the tortious interference claim is preempted as to both Defendants to the extent Plaintiff relies on the misappropriation of information. Diamond Power Int'l. Inc., 540 F.Supp.2d at 1347 (finding tortious interference with contract or business relations claim superseded by GTSA because the plaintiff relied on precisely the same conduct and injury in support of its interference claims as the conduct necessary to prove its trade-secrets claims).

However, Plaintiff makes the additional allegation that, rather than relying on Agilysys' protected information to induce customers away from Agilysys, Defendants solicited customers by falsely stating that Agilysys was no longer in the business of selling certain hardware or solutions. Thus, Plaintiff contends that Hall's defamatory statements interfered with Agilysys' business relationships. The Court finds that this is separate from the allegations underlying Plaintiff's claim for misappropriation.

■■■■ "[O]nly strangers to the contractual relationship and to the underlying business relationship are liable for tortious interference." Tom's Amusement Co. v. Total Vending Servs., 243 Ga.App. 294, 296, 533 S.E.2d 413 (2000). "[A]n employee is permitted to solicit his former customers on behalf of a new employer. Fair competition is always legal, and absent a valid noncompete or nonsolicit covenant a former employee may go to customers whom he procured for the old employer and en-

deavor to persuade them to change their trade to his advantage." Id. at 298, 533 S.E.2d 413 (quotation and footnote omitted). Plaintiff has alleged that Hall was the sole employee responsible for selling the hardware and technology solutions at issue and that he could contact any prospective customers or existing customers for potential sales. Am. Comp. at ¶¶ 11, 13. Thus, Hall was not a stranger to the business relationship, and therefore, Plaintiff's tortious interference with business relations claim against Hall fails.

As for Solutions II, as noted above, Plaintiff's claim for tortious interference with business relationships is premised on underlying defamatory statements that were allegedly used to solicit Agilysys's customers and interfere with Agilysys's business. Plaintiff makes two allegations with regard to the underlying defamatory statements. First, Plaintiff asserts that Solutions II solicited Agilysys' potential and existing customers by making defamatory statements. Am. Compl. at ¶¶ 142–143. There are no facts to support this allegation. Second, Plaintiff contends that Hall acted as Solutions II's agent when Hall made the alleged defamatory statements. See id. at ¶¶ 145–146, Count X (Oral Defamation/Slander). The Court has found that Hall's defamatory statements cannot be imputed to Solutions II based on Plaintiff's pleadings. Therefore, the tortious interference with business relationships claim against Solutions II must likewise fail because the underlying defamatory statements do not support a claim against Solutions II. In sum, Plaintiff's tortious in-

**6.** The Court rejects Plaintiff's argument that the GTSA does not supersede these claims because Plaintiff has pled a tortious interference with business relationships claim based on a misappropriation of confidential and proprietary information, rather than just trade secrets. See Robbins v. Supermarket Equip. Sales, LLC, 290 Ga. 462, 466, 722

S.E.2d 55, 58 (2012) (explaining that a plaintiff may not avoid preemption simply by pleading that the information does not qualify as a trade secret under the act and the exceptions to the GTSA do not exempt equitable relief claims for the misappropriation of confidential or proprietary information).

terference with contracts and business relationships claims in Count V are dismissed as to both Defendants.

## I. Count VI—Tortious Interference with Contract & Business Relations—Defendant Solutions II

█ Plaintiff alleges a separate claim for tortious interference with contract and business relations against only Solutions II. In setting out the facts in the Amended Complaint, Plaintiff contends that Hall and Solutions II tortiously interfered with Agilysys' contractual and business relationships by employing Agilysys' business consultants, Pamela Eversole and Robert LaPorte. Plaintiff asserts that Eversole and LaPorte had access to Agilysys's confidential and proprietary information and agreed not to use this information when performing work for third parties pursuant to a Consulting Services Agreement. Plaintiff contends that Solutions II hired Eversole and LaPorte with the expectation that these consultants would pursue business opportunities for Solutions II, rather than Agilysys. Plaintiff asserts that this will inevitably result in the disclosure of Agilysys' trade secret, confidential, and/or proprietary information. Plaintiff claims that Solutions II solicited Agilysys' potential and existing customers using proprietary information from Eversole and LaPorte. In sum, Plaintiff appears to contend that Solutions II hired Eversole and LaPorte, and that Eversole and LaPorte, with Solutions II's knowledge, used Agilysys's confidential information to then solicit customers for Solutions II. As a result, Plaintiff contends that Solutions II interfered with the business relationships Agilysys had with its existing and potential customers.

Much like the earlier tortious interference claim, Plaintiff has failed to allege facts to support the interference with any specific contracts.[7] As a result, any claim based on a tortious interference with contracts is dismissed.

█ As for business relations,

In establishing a cause of action for malicious or tortious interference with business relations, the [plaintiff] must demonstrate that the [defendant] (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the appellants, and (4) for which the appellants suffered some financial injury.

Tom's Amusement Co., 243 Ga.App. at 295, 533 S.E.2d 413 (2000). As explained above, fair competition is legal, and absent a valid noncompete or nonsolicit covenant, a new employee may go to customers he served under a previous employer and attempt to persuade them to discontinue business with the previous employer. Id. at 298, 533 S.E.2d 413.

[A] competitor's privilege of fair competition is lost when wrongful means in the solicitation of employees are utilized. Such wrongful means generally involve predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.

Id. at 297, 533 S.E.2d 413.

Here, Plaintiff contends that the fair competition was lost because Solutions II used Agilysys' confidential information,

---

7. Plaintiff appears to contend that Solutions II interfered with Eversole and LaPorte's consultant contracts with Agilysys, but there are no facts to support any improper conduct.

Instead, it appears that Eversole and LaPorte merely began consulting for Solutions II instead.

gained from Eversole and LaPorte. However, Plaintiff has not pled sufficient information to show that Solutions II knew it was using Agilysys' confidential information, much less any facts explaining what the confidential information consisted of. Plaintiff merely alleges that Solutions II "was aware that Eversole and LaPorte" had access to Agilysys' confidential information and that Solutions II was "aware that Eversole and LaPorte would inevitably have to use confidential information." Am. Compl. at ¶¶ 158–159. Additionally, there are no facts to support the allegation that Solutions II was soliciting Agilysys' customers, beyond mere conclusory allegations that Solutions II did so. Thus, Plaintiff has failed to plead sufficient facts to support that Solutions II acted improperly, purposely and with malice with an intent to injure.[8] Accordingly, Plaintiff's claim against Solutions II for tortious interference with contracts and business relations is dismissed.

### J. Count XI—Civil Conspiracy— Both Defendants

Plaintiff alleges that prior to Hall's resignation from Agilysys, Hall and Solutions II "conspired and made a plan to unlawfully tortiously interfere with" Agilysys's business relationships and contracts, to misappropriate trade secrets and confidential information, and to use and obtain information through unauthorized access to Agilysys's protected computer systems. Am. Compl. at ¶ 209.

A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.

J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell, 284 Ga.App. 552, 560, 644 S.E.2d 440, 448 (2007). No underlying torts remain in this case against Solutions II. Therefore, there can be no civil conspiracy between Solutions II and Hall to have committed them. See Earthcam, Inc., 2012 WL 12836518, at *13 (where underlying tort claim for violation of GCSPA was dismissed, civil conspiracy claim relying on GCSPA claim was also dismissed).

Moreover, Plaintiff has not alleged any facts to show that Defendants acted in concert and instead has made mere legal conclusions that Defendants "conspired and made a plan." Am. Compl. at ¶ 209. Hall's employment with Solutions II is not enough to allege a conspiracy. See Earthcam, Inc., 2012 WL 12836518, at *14 ("The existence of a business relationship between Defendants is insufficient to infer the existence of the 'meeting of the minds' required to support a conspiracy claim."). Therefore, Plaintiff's civil conspiracy claim is due to be dismissed.

### K. Summary of Defendants' Motions To Dismiss

Based on the Court's rulings above, the Court will dismiss all claims against Solutions II. As for Hall, the Court will allow the following claims to proceed: Count I— Violation of Computer Fraud and Abuse Act; Count II—Violation of DTSA; Count IV—Misappropriation of Trade Secrets

---

**8.** Plaintiff's claim is confusing at best. In setting forth the facts, Plaintiff asserts that Hall and Solutions II have "tortiously interfered with Agilysys's contractual and business relationships by employing Agilysys's business consultants." Am. Compl. at ¶ 66. Yet, Plaintiff brings this tortious interference claim against only Solutions II. To be clear, there are no facts to support that Hall employed Agilysys's business consultants.

pursuant to GTSA; Count IX—Breach of Contract—Non–Disclosure Obligations; and Count X—Oral Defamation/Slander.

The following updated chart reflects the Court's rulings.

| Count | Title | Alleged Against Defendant | Proceeds Against Defendant |
|---|---|---|---|
| I | Violation of Computer Fraud & Abuse Act | Both Defendants | Hall |
| II | Violation of Defend Trade Secrets Act | Both Defendants | Hall |
| III | Violation of the Georgia Computer Systems Protection Act | Both Defendants | None |
| IV | Misappropriation of Trade Secrets pursuant to Georgia Trade Secrets Act | Both Defendants | Hall |
| V | Tortious Interference with Contract & Business Relations | Both Defendants | None |
| VI | Tortious Interference with Contract & Business Relations | Solutions II | None |
| VII | Breach of Fiduciary Duty | Hall | None |
| VIII | Breach of Employee Duty of Loyalty | Hall | None |
| IX | Breach of Contract - Non-Disclosure Obligations | Hall | Hall |
| X | Oral Defamation/Slander | Both Defendants | Hall |
| XI | Civil Conspiracy | Both Defendants | None |

## IV. Plaintiff's Motion for a Preliminary Injunction

██ Plaintiff moves for a preliminary injunction on all of its claims. In light of the Court's ruling on Defendants' motions to dismiss, there are no claims remaining against Solutions II, and thus, there can be no preliminary injunction against it. As for Hall, the only claims pending against him are for violation of the CFAA, violation of the DTSA, misappropriation of trade secrets pursuant to GTSA, breach of contract regarding the Non–Disclosure Agreement, and oral defamation/slander, and therefore, these are the only claims to which a preliminary injunction could apply.

Plaintiff asks the Court to issue a preliminary injunction against Defendants in four ways. In responding to Plaintiff's Motion, Hall agreed to Plaintiff's Requests Nos. 2 and 4: Hall will return all of Agilysys' information and property to Agilysys and Hall will not delete, shred, destroy, or otherwise dispose of or impair any docu-ments, information, or evidence, including electronically-stored information, in his possession, custody, or control. Therefore, Agilysys seeks a preliminary injunction for the remaining two demands, Requests Nos. 1 and 3, as follows:

(1) restraining Defendants, and their respective agents and employees from using, printing, copying, distributing, disclosing, or examining or destroying any information taken from or belonging to Agilysys, whether or not in original form, including without limitation, Agilysys's customer information and data, and other of Agilysys's confidential and proprietary information at any time or in the solicitation of Agilysys's customer or prospective customers; [and]

(3) ordering Defendants, and their respective agents and employees, to deliver any computers (including personal computers), handheld, or other electronic devices capable of storing Agilysys's electronically stored information to Agilysys's counsel for forensic imaging

within 48 hours of the Court's entry of a preliminary injunction.

Pl.'s Mot. for Prelim. inj. at 26–27· (Doc. No. 19).[9]

■■■■■■ A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A plaintiff seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest." Jysk Bed'N Linen v. Dutta–Roy, 810 F.3d 767, 774 (11th Cir. 2015). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established] the burden of persuasion as to each of the four prerequisites." Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). The decision as to whether a plaintiff has carried this burden "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (quotation omitted).

Turning to the irreparable injury prong, Plaintiff argues that "Defendants' misappropriation of Agilysys's trade secrets and Hall's violation of the Non–Disclosure Agreement demonstrate that Agilysys will suffer irreparable harm if a preliminary injunction is not granted." PL's Mot. for Prelim. Inj. at 23 (Doc. No. 19). Thus, it is clear from this plain language that Plaintiff did not address the irreparable harm that will result from Hall's alleged violation of the CFAA or the DTSA or from Hall's alleged defamatory statements. Accordingly, Plaintiff's preliminary injunction based on those claims fails.

As for the irreparable harm Agilysys will face if a preliminary injunction does not issue based on Plaintiff's claims that Hall misappropriated trade secrets and breached the Non–Disclosure Agreement, Plaintiff contends that the "actual and threatened misappropriation of trade secrets and Defendants' ongoing tortious activities will cause Agilysys to suffer immediate and irreparable harm in the absence of the issuance of an injunction." Id. at 24. Plaintiff also provides a string of case citations with parenthetical explanations discussing loss of goodwill and solicitation of customers as irreparable injuries. Finally, Plaintiff presents the Declaration of Darren Student, Agilysys' Director of Sales, in support. Mr. Student states that "Agilysys has been damaged by the loss of its financial competitive edge arising from the disclosure of its confidential, proprietary and trade secret information." Student Decl. at ¶ 44 (Doc. 19–1).

■■■■■ "A showing of irreparable injury is the *sine qua non* of injunctive relief." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation omitted). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Id. (quotation omitted). Here, Plaintiff offers no evidence of actual or imminent injury. Instead, Plaintiff merely states that it will suffer irreparable harm or that it will suffer a loss of competitive edge. This is conclusory. Moreover, Plaintiff lists cases with parenthetical explanations but does not actually connect those

---

9. Once again, Plaintiff exceeded the page limitations in its Motion. The Court will consider

Plaintiff's Motion but warns Plaintiff not to exceed the page limitations in the future.

cases to the alleged facts of this case. While loss of goodwill and customers can be considered for an irreparable injury, BellSouth Telecomms. Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005), Plaintiff has not clearly alleged such a loss, but instead, merely lists cases. Nor has Plaintiff clearly established a loss of goodwill or customers that will result if an injunction does not issue. Plaintiff has not identified a single customer it has lost or will lose based on Hall's actions or explained how any customer goodwill has been lost or will be lost in the future. The Court finds Plaintiff's speculative allegations of irreparable harm insufficient to justify the broad preliminary injunction Plaintiff seeks.[10] See Sylvan Learning Inc. v. Learning Sols., Inc., 795 F.Supp.2d 1284, 1301 (S.D. Ala. 2011) (finding no irreparable harm because the plaintiff did not present evidence showing that it had lost customers or that it had difficulty attracting new ones); Mercedes–Benz U.S. Int'l Inc. v. Cobasys, LLC, 605 F.Supp.2d 1189, 1207 (N.D. Ala. 2009) (denying preliminary injunction because the plaintiff merely speculated about the loss of goodwill and reputation); Curves Int'l. Inc. v. Mosbarger, 525 F.Supp.2d 1310, 1314 (M.D. Ala. 2007) (denying preliminary injunction where the plaintiff failed to show that loss of goodwill and customers was likely without an injunction); H20 To Go, L.L.C. v. Martinez, No. 05-21353-CIV-LENARD, 2005 WL 2065220, at *5 (S.D. Fla. Aug. 22, 2005) (no irreparable harm where the plaintiff failed to articulate any precise injury or immediate threatened harm and the harm was based merely on

beliefs and conclusory claims about theoretical harm); compare BellSouth Telecomms., 425 F.3d at 970 (loss of goodwill and customers supported by record, which showed that the BellSouth was losing about 3200 customers per week). Accordingly, the Court will not issue a preliminary injunction at this time. See Siegel, 234 F.3d at 1176 ("the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").

## V. Summary

For the foregoing reasons, the Court **GRANTS** Defendant Solutions II's Motion to Dismiss (Doc. No. 26) and **DISMISSES** all claims against Solutions II; **GRANTS IN PART AND DENIES IN PART** Defendant Hall's Motion to Dismiss (Doc. No. 27); **DENIES** Plaintiff's Motion for a Preliminary Injunction (Doc. No. 19); and **DENIES** Plaintiff's Motion for Hearing (Doc. No. 42). The Court **DIRECTS** Plaintiff and Defendant to re-file a Joint Preliminary Report and Discovery Plan in light of the Court's rulings herein, within fourteen (14) days of the date of entry of this order. The Court **DIRECTS** Hall to comply with Plaintiff's Request No. 2, within twenty-four hours of the date of entry of this order, and Request No. 4 in Plaintiff's Motion for a Preliminary Injunction, as Hall has agreed to do.

**SO ORDERED**, this 25th day of May, 2017.

---

10. In its Motion, within the section on irreparable harm, Agilysys argues that an injunction must issue because Hall agreed that such an injunction would result if he breached or threatened breach of the Non–Disclosure Agreement. This does not address irreparable harm. Anago Franchising, Inc. v. CHMI. Inc., No. 09-60713-CIV-ALTONAG, 2009 WL

5176548, at *11 (S.D. Fla. Dec. 21, 2009) (quotations omitted) (a contract provision allowing for an injunction "is not alone dispositive of the issue of irreparable harm, and does not insulate a plaintiff seeking a preliminary injunction from the need to prove that it will suffer imminent irreparable injury as a result of the [defendant's] conduct").